**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| DUANE TIPTON, | 3:17-cv-00032-RCJ-CLB |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE[1]** |
| GUICE, *et al.,* | |
| Defendants. | |

This case involves a civil rights action filed by Plaintiff Duane Tipton ("Tipton") against Defendants Morris Guice ("Guice") and Timothy Filson ("Filson") (collectively referred to as "Defendants").[2]  Currently pending before the court is a motion for summary judgment brought by Defendant Guice[3] (ECF Nos. 53, 55).[4]  Tipton responded (ECF No. 59) and Guice replied (ECF No. 65).  Having thoroughly reviewed the record and papers, the court hereby recommends Guice's motion for summary judgment (ECF No. 53) be denied.

**I.     BACKGROUND AND PROCEDURAL HISTORY**

Tipton is an inmate in the custody of Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC").  (ECF No. 7.)  On

---

[1]     This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]     Tipton also named B. Belmore, W. Kulolia, D. Neven, Perry Russell, D. Tristan, and J. Zelaya as defendants in his amended complaint.  (*See* ECF No. 7.)  However, those defendants were dismissed by the court on screening.  (ECF No. 12 at 8.)

[3]     It appears the motion for summary judgment is only brought on behalf of Defendant Guice because Defendant Filson did not file his notice of acceptance of service and joinder to the answer in this case until after the motion for summary judgment had already been filed (*See* ECF Nos. 56, 64).

[4]     ECF No. 55 is an errata to the motion for summary judgment, which includes various declarations in support of the motion for summary judgment.

1    April 13, 2018, Tipton filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. §

2    1983.  In the FAC, Tipton sues Defendants for events that took place at the High Desert

3    State Prison ("HDSP").   (*Id.*) Pursuant to 28 U.S.C. § 1915A(a), the court screened

4    Tipton's FAC on March 11, 2019.  (ECF No. 12.)  The court allowed Tipton to proceed on

5    his Count I, Eighth Amendment failure to protect claim against Defendants.  (*Id.*)

6         The Count I claim alleges the following: On January 23, 2016, Tipton submitted an

7    informal grievance against Correctional Officer Guice, alleging that Guice colluded with

8    Tipton's cellmate to sexually harass him and taunt him about performing sex acts.  (ECF

9    No. 7 at 5.) On January 29, 2016, Associate Warden Filson informed Tipton that his

10   grievance was not accepted as it contained more than one incident.  (*Id.*) Guice began

11   talking to Tipton's cellmate, informing the cellmate that Tipton had been convicted of

12   sexual assault on a minor and told the cellmate that he could have sex with Tipton any

13   time, and Guice would not file a report.   (*Id.*) Tipton refused his cellmate's sexual

14   advances, so his cellmate physically attacked him by punching him repeatedly in the face,

15   giving him black eyes and swollen lips.  (*Id.* at 5-6).  After Tipton fell to the floor, the

16   cellmate kicked and stomped on Tipton, causing injuries to his head and neck.  (*Id.*) Guice

17   and the cellmate threatened Tipton with harm and possible death if he reported the

18   assault.  (*Id.* at 6).  Tipton subsequently submitted a grievance.  (*Id.*) He then was taken

19   to the infirmary, where his injuries were treated.  (*Id.*) Correctional Officer John Doe stood

20   by and ignored Tipton's pleas for help.  (*Id.*) Based on the allegations, the court found that,

21   liberally construed, the FAC alleges that Defendants Guice and Filson knew that Tipton

22   was in danger from his cellmate but failed to protect him from danger.

23        **A.   Undisputed Facts Related to Failure to Protect Claim**

24        The following facts are undisputed by both parties: On January 23, 2016, Tipton

25   made allegations that Guice sexually harassed him, specifically that on January 20, 2016,

26   Guice spoke to Tipton's cellmate via intercom in their cell, saying he did not "want to catch

27   him laying on the bunk with his underwear turned backwards" and on January 22, 2016,

28   Guice said something to Tipton's cellmate about "homosexual acts" with Tipton.  (ECF No.

53-1 at 7.)  NDOC recorded these complaints and began an investigation.  (*Id.* at 1-11.)  When reporting this incident to the supervising officer, Tipton agreed to remain housed in the same cell until January 25, 2016.  (*Id.* at 7.)

On February 13, 2016, Tipton informed a correctional officer that his cellmate attacked him, and he was in fear for his safety.  (ECF No. 53-2 at 5, 7.)  Tipton had visible bruising over his right eye and on the left side of his neck.  (*Id.*)  Tipton was taken to the infirmary for examination of his injuries and later moved to a segregation unit.  (*Id.*)  Tipton's cellmate was also moved to a segregation unit pending a Notice of Charges.  (*Id.*)

Both Tipton and his cellmate were charged with assault stemming from the physical altercation.  (ECF Nos. 53-3, 53-4.)  The hearing officer dismissed the assault charge against Tipton at his disciplinary hearing.  (ECF No. 53-5 at 1.)  However, Tipton's cellmate was found guilty of assault and sanctioned to 180 days in disciplinary segregation, had property forfeited in relation to the incident, and was ordered to pay restitution.  (ECF No. 53-6 at 1.)

Tipton continued to file grievances regarding the alleged sexual harassment by Guice, and NDOC forwarded Tipton's grievances to the Inspector General ("IG").  (ECF No. Ex. 53-7.)

**B.    Guice's Motion for Summary Judgment**

On December 16, 2019, Guice filed a motion for summary judgment (ECF Nos. 53, 55.)  Guice asserts he is entitled to summary judgment because Guice was not deliberately indifferent to serious threats to Tipton's safety, and, alternatively, Guice is entitled to qualified immunity.  (*Id.*)  Tipton opposed the motion (ECF No. 59), and Guice replied (ECF No. 65).

**II.    LEGAL STANDARD**

Summary judgment allows the court to avoid unnecessary trials.  *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).  The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex*

1    *Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "[T]he substantive law will identify which facts

2    are material.  Only disputes over facts that might affect the outcome of the suit under the

3    governing law will properly preclude the entry of summary judgment.  Factual disputes

4    that are irrelevant or unnecessary will not be counted."  *Anderson v. Liberty Lobby*, 477

5    U.S. 242, 248 (1986).  A dispute is "genuine" only where a reasonable jury could find for

6    the nonmoving party.  *Id.*  Conclusory statements, speculative opinions, pleading

7    allegations, or other assertions uncorroborated by facts are insufficient to establish a

8    genuine dispute.  *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007);

9    *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996).  At this stage, the

10   court's role is to verify that reasonable minds could differ when interpreting the record;

11   the court does not weigh the evidence or determine its truth.  *Schmidt v. Contra Costa

12   Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

13          Summary judgment proceeds in burden-shifting steps.  A moving party who does

14   not bear the burden of proof at trial "must either produce evidence negating an essential

15   element of the nonmoving party's claim or defense or show that the nonmoving party

16   does not have enough evidence of an essential element" to support its case.  *Nissan Fire

17   & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  Ultimately, the

18   moving party must demonstrate, on the basis of authenticated evidence, that the record

19   forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as

20   to disputed material facts.  *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285

21   F.3d 764, 773 (9th Cir. 2002).  The court views all evidence and any inferences arising

22   therefrom in the light most favorable to the nonmoving party.  *Colwell v. Bannister*, 763

23   F.3d 1060, 1065 (9th Cir. 2014).

24          Where the moving party meets its burden, the burden shifts to the nonmoving party

25   to "designate specific facts demonstrating the existence of genuine issues for trial."  *In re

26   Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted).  "This burden

27   is not a light one," and requires the nonmoving party to "show more than the mere

28   existence of a scintilla of evidence. . . .  In fact, the non-moving party must come forth

with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted).  The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324.  Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct.  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

**III.    DISCUSSION**

**A.    Civil Rights Claims under 42 U.S.C. § 1983**

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991).  Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law.  *Warner*, 451 F.3d at 1067.  Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying constitutional or statutory right.

///

1

### B.    Eighth Amendment Deliberate Indifference – Failure to Protect

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  Although prison conditions may be, and often are, restrictive and harsh, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted).  "[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citation and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 833).  "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal, and often violent, conduct,' have stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted).  "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. Farmer, 511 U.S. at 834.  Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met.  *See id.* at 834.

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted).  This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted).  "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of*

*Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)).  It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element.  This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837.  "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).  Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by* City of Reno, Nev. v. Conn, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

According to Guice's motion for summary judgment, there is no evidence Guice knew of and disregarded a substantial risk to Tipton's safety.  (ECF No. 53 at 7.) Guice argues that while Tipton filed a grievance about the statements Guice allegedly made, Tipton "did not fear any sort of imminent threat, as he remained housed in his cell with his cellmate after lodging his grievance against [Guice,]" and he did not file an emergency grievance.  (*Id.* at 6.) Guice also argues that assuming he did make the statements, "while unprofessional, do not in and of themselves give rise to an Eighth Amendment violation." (*Id.*) (citing *Austin v. Terhune*, 367 F.3d 1167, 1171 (9th Cir. 2004) (holding "the Eighth Amendment's protections do not necessarily extend to mere verbal sexual harassment."). Further, Guice argues the record does not show that these statements were made with the deliberate intent to create a substantial risk of harm to Tipton, "assuming he, indeed, made them." (*Id.* at 6.)

In opposition, Tipton argues that he requested on numerous occasions to be moved out of his unit, but the requests were refused or unanswered.  (ECF No. 59 at 2.)  Tipton also asserts that he pressed the call button in his cell shortly after the incident, but it was not answered.  (*Id.* at 4.)  As to the filing of an emergency grievance, Tipton argues he did not file an emergency grievance because the emergency grievances are given to staff

7

1    members and "he didn't want any problem from 'any staff member' or better yet from

2    Guice," if he were to see the emergency grievance.  (*Id.* at 5-6.)

3        Attached to his opposition, Tipton includes copies of grievances related to his

4    complaint (*See* ECF No. 59 at 12-53).  On January 23, 2016, Tipton filed an informal

5    grievance stating that on January 20, 2016, Guice sexually harassed him by making

6    sexual statements about Tipton to Tipton's cellmate.  (*Id.* at 33-35.)  The grievance also

7    discussed Tipton's call to the IG's Office on January 22, 2016.  (*Id.* at 35-36.)  Tipton stated

8    he was afraid Guice would retaliate against him or get another correctional officer to

9    retaliate against him for complaining about the sexual harassment.  (*Id.* at 37.)  Finally,

10   Tipton stated he was afraid some of the other inmates in the unit heard Guice saying

11   sexual things to Tipton.  (*Id.* at 38.) On February 3, 2016, nearly ten days before the

12   assault, Tipton filed another informal grievance asking to be moved from his cell because

13   he was being sexually harassed by Guice and his cellmate.  (*Id.* at 12.)   Tipton also

14   includes his signed affidavit, which includes the following statements: Tipton asserts that

15   Guice has sexually harassed him on numerous occasions.  (*Id.* at 55.)  Tipton asserts that

16   Guice got his cellmate to beat him up, and his cellmate said he "could thank [Guice] for

17   me getting beaten up."  (*Id.*)

18       Based on the evidence before the court, and in viewing all facts and drawing all

19   inferences in the light most favorable to Tipton, there are genuine issues of material fact

20   that preclude summary judgment.

21       First, the parties seem to dispute whether or not Guice actually made the sexually

22   harassing comments to Tipton.  Tipton filed numerous grievances and a complaint with

23   the IG's Office related to the comments, and while Guice's motion seems to dispute

24   whether the comments were made, no evidence is provided to the contrary.  Thus, the

25   undisputed evidence supports the conclusion that the comments were made

26       The court must now evaluate whether Guice was aware that there was a substantial

27   risk of serious harm to Tipton in making the sexually harassing comments.  Based on

28   Tipton's allegations, Guice made the sexually harassing comments directly to Tipton's

cellmate, and Tipton also feared other inmates in his unit could hear the comments. The objective question of whether a prison officials' actions have exposed an inmate to a substantial risk of serious harm is a question of fact, and as such must be decided by a jury if there is any room for doubt.  *Lemire*, 726 F.3d at 1075-76 (citing *Conn*, 591 F.3d at 1095) (holding that the objective question of whether there was a substantial risk that an arrestee might commit suicide should be decided by a jury.)  A prison official labeling a prisoner a "snitch" can "violat[e] [an inmate's] right to be protected from violence while in custody" and support a cause of action under section 1983.  *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989).  In *Valandingham*, the inmate alleged that a prison official labeled him a "snitch" intending to have plaintiff killed by other inmates.  *Id.* The inmate alleged that as a result of the conduct, fellow inmates approached and threatened him with harm.  *Id.*  Similarly,  a prison official labeling an inmate as a "homosexual" or "sex offender" can sufficiently allege an Eighth Amendment violation.  *See Radillo v. Lunes*, 2008 WL 4209824, *2 (E.D. Cal. Sept. 8, 2008) (denying summary judgment on failure to protect claim where plaintiff showed that he was exposed to a serious risk of being assaulted based on defendant's alleged statements to inmates that plaintiff engaged in a homosexual act); *see also Funtanilla v. Tristan*, 2008 WL 2509725, at *13 (E.D. Cal. June 23, 2008) (plaintiff's allegations that prison officials repeatedly referred to him as a sex offender in front of other inmates, causing him to be assaulted, were sufficient to state a failure to protect claim under the Eighth Amendment).

Here, Tipton has established a triable issue of fact as to whether the sexual harassing comments made by Guice created an objectively substantial risk of harm to Tipton.  A reasonable juror could find that Guice was objectively aware of the substantial risk of serious harm to Tipton when he made sexually harassing comments about Tipton to Tipton's cellmate, which Tipton alleges ultimately led to his attack.

The court must next evaluate whether Guice responded reasonably to the known risk to Tipton's safety.  This inquiry is fact-intensive and typically should not be resolved at the summary judgment stage; as the Supreme Court explained, "[w]hether a prison

official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Lemire*, 726 at 1078 (citing *Farmer*, 511 U.S. at 842 (citation omitted)).

According to Tipton's evidence, he filed numerous grievances and complaints related to his fear of being attacked by his cellmate based on Guice's comments. The evidence shows that Guice and other prison officials did nothing to alleviate Tipton's fear, such as moving him from his cell, which ultimately resulted in Tipton being attacked by his cellmate. Thus, a reasonable juror could find that Guice either participated in or did nothing to alleviate the risk by not having Tipton moved. *See Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009) (noting that an official's failure to act can constitute an Eighth Amendment violation).

In viewing all of these facts and drawing all inferences in the light most favorable to Tipton, the court concludes there is a genuine issue of material fact as to whether the statements were the actual and proximate cause of the physical attack on Tipton. "If reasonable persons could differ" on the question of causation then "summary judgment is inappropriate and the question should be left to a jury." *Lemire*, 726 F.3d at 1080 (citing *White v. Roper*, 901 F.2d 1501, 1506 (9th Cir. 1990)). Based on Tipton's evidence, his cellmate stated Guice was the reason for the attack. Guice presents no evidence to the contrary. Thus, a reasonably juror could find that Guice's sexually harassing comments were the actual and proximate cause of the physical attack on Tipton.

Accordingly, because the court finds that genuine issues of material fact exists that preclude summary judgment, the court recommends that Guice's motion for summary judgment (ECF No. 53) be denied.

## C.    Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown v. Oregon Dept. of Corrections*, 751 F.3d 983, 988–89 (9th Cir. 2014) (citing *Pennhurst State Sch. & Hosp.*

*v. Halderman*, 465 U.S. 89, 100 (1984)).  State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine.  More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery.  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established."  *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).  A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm.  *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012).  The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case.  *Pearson*, 555 U.S. at 240–42.

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Pearson*, 555 U.S. at 236.  "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009).  While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, only the jury can decide the disputed factual issues.  *See Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018).  While the court finds a genuine issue of material fact exists as to whether Tipton's constitutional rights were violated, the court will address the "clearly established" prong at this time.

Guice contends he is entitled to qualified immunity because there was no clearly established law that inappropriate comments, in and of themselves, rise to the level of an Eighth Amendment violation.  (ECF No. 53 at 7-9.)  The court finds that Guice too narrowly

defines the right at issue.  It is not required that there be a case directly on point before concluding that the law is clearly established, "but existing precedent must have placed the statutory or constitutional question beyond debate."  *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  "For a right to be clearly established it is not necessary that the very action in question have previously been held unlawful."  *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)  "To define the law in question too narrowly would be to allow defendants to define away all potential claims."  *Jackson*, 90 F.3d at 332 (citing *Kelley v. Borg*, 60 F.3d 664, 667 (9th Cir. 1995)).

While Guice is correct that verbally harassing comments, in and of themselves, do not rise to the level of an Eighth Amendment violation, Tipton alleges that those comments led to an assault.  It is well established that verbal harassment intended to endanger an inmate may violate the Constitution.  *See Helling v. McKinney*, 509 U.S. 25, 33 (1993) (conduct by prison officials that is "sure or very likely to cause" future serious injury to an inmate may state an Eighth Amendment claim); *see also, Valandingham*, 866 F.2d at 1138-39 (claim that prison officials labeled inmate a "snitch" for the purpose of subjecting him to life-threatening retaliation by other inmates actionable under section 1983).

Assuming the truth of Tipton's allegations, any reasonable prison official in Guice's position would know that the actions Guice took, and failed to take, violated the Eighth Amendment.  Guice cannot claim ignorance to an inmate's right to be protected from violence at the hands of other inmates.  That right has been clearly established since the Supreme Court's decision in *Farmer v. Brennan* in 1994.  *See* 511 U.S. at 833; *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016).  The Ninth Circuit has held that it is clearly established that prison officials must "take reasonable measures to mitigate the [known] substantial risk[s]" to an inmate.  *Castro*, 833 F.3d at 1067.  Further, the Ninth Circuit has explicitly held that allegations that a prison official labeled an inmate a "snitch," subjecting him to retaliation by other inmates, supported a cause of action for

violation of the inmate's constitutional right to be protected from violence while in custody. *Valandingham*, 866 F.2d at 1138. The same applies to labels of "homosexual" or "sex offender." *See Radillo*, 2008 WL 4209824, *2 (E.D. Cal. Sept. 8, 2008) (denying summary judgment on failure to protect claim where plaintiff showed that he was exposed to a serious risk of being assaulted based on defendant's alleged statements to inmates that plaintiff engaged in a homosexual act); *see also Funtanilla*, 2008 WL 2509725, at *13 (E.D. Cal. June 23, 2008) (plaintiff's allegations that prison officials repeatedly referred to him as a sex offender in front of other inmates, causing him to be assaulted, were sufficient to state a failure to protect claim under the Eighth Amendment). Accordingly, the court finds that the constitutional right is clearly established, and Guice is not entitled to qualified immunity.

## V.   CONCLUSION

For good cause appearing and for the reasons stated above, the court recommends that Guice's motion for summary judgment (ECF No. 53) be denied.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.   This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## VI.   RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Guice's motion for summary judgment (ECF No. 53) be **DENIED**.

**DATED**: April 29, 2020.

_____
**UNITED STATES MAGISTRATE JUDGE**

13