# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

DUANE TIPTON,

          Plaintiff,

v.

GUICE, *et al.*,

          Defendants.

3:17-cv-00032-RCJ-CLB

**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]

This case involves a civil rights action filed by Plaintiff Duane Tipton ("Tipton") against Defendants Morris Guice ("Guice") and Timothy Filson ("Filson") (collectively referred to as "Defendants").[2]  Currently pending before the court is a motion for summary judgment brought by Defendant Filson[3] (ECF Nos. 85, 88).[4]  Tipton responded (ECF No. 89) and Filson did not reply.  Having thoroughly reviewed the record and papers, the court hereby recommends Filson's motion for summary judgment (ECF No. 85) be denied.

## I.   BACKGROUND AND PROCEDURAL HISTORY

Tipton is an inmate in the custody of Nevada Department of Corrections ("NDOC") and is currently housed at the Lovelock Correctional Center ("LCC").  (ECF No. 7.)  On

---

[1]   This Report and Recommendation is made to the Honorable Robert C. Jones, United States District Judge.  The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]   Tipton also named B. Belmore, W. Kulolia, D. Neven, Perry Russell, D. Tristan, and J. Zelaya as defendants in his amended complaint.  (*See* ECF No. 7.)  However, those defendants were dismissed by the court on screening.  (ECF No. 12 at 8.)

[3]   The present motion for summary judgment was filed solely on behalf of Filson.  A previous motion for summary judgment (ECF No. 53) filed on behalf of defendant Guice and was denied.  (*See* ECF No. 74, 78.)

[4]   ECF No. 88 is an errata to the motion for summary judgment, which includes the declaration of Associate Warden Monique Hubbard-Pickett in support of the motion for summary judgment.

1

1  April 13, 2018, Tipton filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. §
2  1983.  In the FAC, Tipton sues Defendants for events that took place at the High Desert
3  State Prison ("HDSP").  (*Id.*)  Pursuant to 28 U.S.C. § 1915A(a), the court screened
4  Tipton's FAC on March 11, 2019.  (ECF No. 12.)  The court allowed Tipton to proceed on
5  his Count I, Eighth Amendment failure to protect claim against Defendants.  (*Id.*)

6  The Count I claim alleges the following: On January 23, 2016, Tipton submitted an
7  informal grievance against Correctional Officer Guice, alleging that Guice colluded with
8  Tipton's cellmate to sexually harass him and taunt him about performing sex acts.  (ECF
9  No. 7 at 5.)  On January 29, 2016, Associate Warden Filson informed Tipton that his
10 grievance was not accepted because it was a duplicate grievance.  (*Id.*)  Guice began
11 talking to Tipton's cellmate, informing the cellmate that Tipton had been convicted of
12 sexual assault on a minor and told the cellmate that he could have sex with Tipton any
13 time, and Guice would not file a report.  (*Id.*)  Tipton refused his cellmate's sexual
14 advances, so his cellmate physically attacked him by punching him repeatedly in the face,
15 giving him black eyes and swollen lips.  (*Id.* at 5-6).  After Tipton fell to the floor, the
16 cellmate kicked and stomped on Tipton, causing injuries to his head and neck.  (*Id.*)  Guice
17 and the cellmate threatened Tipton with harm and possible death if he reported the
18 assault.  (*Id.* at 6).  Tipton subsequently submitted a grievance.  (*Id.*)  He then was taken
19 to the infirmary, where his injuries were treated.  (*Id.*)  Based on the allegations, the court
20 found that, liberally construed, the FAC alleges that Defendants Guice and Filson knew
21 that Tipton was in danger from his cellmate but failed to protect him from danger.

22 **A.    Undisputed Facts Related to Failure to Protect Claim**

23 The following facts are undisputed by both parties: On January 23, 2016, Tipton
24 made allegations that Guice sexually harassed him, specifically that on January 20, 2016,
25 Guice spoke to Tipton's cellmate via intercom in their cell, saying he did not "want to catch
26 him laying on the bunk with his underwear turned backwards" and on January 22, 2016,
27 Guice said something to Tipton's cellmate about "homosexual acts" with Tipton.  (ECF No.

28

53-1 at 7.) NDOC recorded these complaints and began an investigation. (*Id.* at 1-11.) When reporting this incident to the supervising officer, Tipton agreed to remain housed in the same cell until January 25, 2016. (*Id.* at 7.)

On February 13, 2016, Tipton informed a correctional officer that his cellmate attacked him, and he was in fear for his safety. (ECF No. 53-2 at 5, 7.) Tipton had visible bruising over his right eye and on the left side of his neck. (*Id.*) Tipton was taken to the infirmary for examination of his injuries and later moved to a segregation unit. (*Id.*) Tipton's cellmate was also moved to a segregation unit pending a Notice of Charges. (*Id.*)

Both Tipton and his cellmate were charged with assault stemming from the physical altercation. (ECF Nos. 53-3, 53-4.) The hearing officer dismissed the assault charge against Tipton at his disciplinary hearing. (ECF No. 53-5 at 1.) However, Tipton's cellmate was found guilty of assault and sanctioned to 180 days in disciplinary segregation, had property forfeited in relation to the incident, and was ordered to pay restitution. (ECF No. 53-6 at 1.) Tipton continued to file grievances regarding the alleged sexual harassment by Guice, and NDOC forwarded Tipton's grievances to the Inspector General ("IG"). (ECF No. 53-7.)

### B. Filson's Motion for Summary Judgment

On August 25, 2020, Filson filed a motion for summary judgment (ECF Nos. 85, 88.) Filson asserts he is entitled to summary judgment because Filson was not deliberately indifferent to serious threats to Tipton's safety, and, alternatively, Filson is entitled to qualified immunity. (*Id.*) Tipton opposed the motion (ECF No. 89), and Filson did not reply.

## II. LEGAL STANDARD

Summary judgment allows the court to avoid unnecessary trials. *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994). The court properly grants summary judgment when the record demonstrates that "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 330 (1986). "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Id.* Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Nelson v. Pima Cmty. Coll.*, 83 F.3d 1075, 1081–82 (9th Cir. 1996). At this stage, the court's role is to verify that reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Schmidt v. Contra Costa Cnty.*, 693 F.3d 1122, 1132 (9th Cir. 2012); *Nw. Motorcycle Ass'n*, 18 F.3d at 1472.

Summary judgment proceeds in burden-shifting steps. A moving party who does not bear the burden of proof at trial "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element" to support its case. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). Ultimately, the moving party must demonstrate, on the basis of authenticated evidence, that the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party as to disputed material facts. *Celotex*, 477 U.S. at 323; *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014).

Where the moving party meets its burden, the burden shifts to the nonmoving party to "designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citation omitted). "This burden is not a light one," and requires the nonmoving party to "show more than the mere

4

existence of a scintilla of evidence. . . . *Id.* In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id.* (citations omitted). The nonmoving party may defeat the summary judgment motion only by setting forth specific facts that illustrate a genuine dispute requiring a factfinder's resolution. *Liberty Lobby*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324. Although the nonmoving party need not produce authenticated evidence, Fed. R. Civ. P. 56(c), mere assertions, pleading allegations, and "metaphysical doubt as to the material facts" will not defeat a properly-supported and meritorious summary judgment motion, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

For purposes of opposing summary judgment, the contentions offered by a *pro se* litigant in motions and pleadings are admissible to the extent that the contents are based on personal knowledge and set forth facts that would be admissible into evidence and the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

### III.   DISCUSSION

#### A.   Civil Rights Claims under 42 U.S.C. § 1983

42 U.S.C. § 1983 aims "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006) (quoting *McDade v. West*, 223 F.3d 1135 1139 (9th Cir. 2000)). The statute "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights[,]" *Conn v. Gabbert*, 526 U.S. 286, 290 (1999), and therefore "serves as the procedural device for enforcing substantive provisions of the Constitution and federal statutes." *Crumpton v. Almy*, 947 F.2d 1418, 1420 (9th Cir. 1991). Claims under section 1983 require a plaintiff to allege (1) the violation of a federally-protected right by (2) a person or official acting under the color of state law. *Warner*, 451 F.3d at 1067. Further, to prevail on a § 1983 claim, the plaintiff must establish each of the elements required to prove an infringement of the underlying

5

constitutional or statutory right.

### B.  Eighth Amendment Deliberate Indifference – Failure to Protect

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation and quotation marks omitted). "[P]rison officials have a duty … to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citation and quotations omitted); *see also Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015) (citing *Farmer*, 511 U.S. at 833). "Having incarcerated 'persons [with] demonstrated proclivit[ies] for antisocial criminal, and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citing *Rhodes*, 452 U.S. at 347).

To establish a violation of this duty, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

When an inmate claims prison officials failed to take reasonable steps to protect him, he must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citations omitted). This is a question of fact, and "must be decided by the jury if there is any room for doubt." *Lemire v. Cal. Dep't of Corr. and Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013) (citation omitted). "[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk

6

of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. The subjective element requires the prison official being sued to know of and disregard the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by* City of Reno, Nev. v. Conn, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011)).

According to Filson's motion for summary judgment, there is no evidence Filson knew of and disregarded a substantial risk to Tipton's safety. (ECF No. 85 at 7.) Filson argues that because Tipton already filed a Prison Rape Elimination Act ("PREA") complaint and an investigation began, Filson cannot be deliberately indifferent to Tipton's safety. (ECF No. 85 at 6.) Filson also argues that Tipton "did not fear any sort of imminent threat from either Officer Guice or his cellmate, as he agreed to remain housed in his cell with his cellmate after lodging his grievance against Officer Guice" and he did not file an emergency grievance. (ECF No. 85 at 6-7.)

In opposition, Tipton argues that Filson's rejection of the grievance as duplicative was improper under AR 740 and did not address the imminent danger Tipton was in. (ECF No. 89.) Tipton also argues he only agreed to remain in the same cell because Sergeant Thompson said he must wait for the caseworker to be moved. (ECF No. 89 at 3.) Tipton states that he filed a kite to shift command expressing that he was afraid for his life and subsequently filed numerous grievances expressing that he genuinely feared for his life.

7

(*Id.*)  As to the filing of an emergency grievance, Tipton states he did not file an emergency grievance because the emergency grievances are given to all staff members which permits the staff member with a sexual abuse claim lodged against them to see the claim and inhibit the claimant from grieving the issue further.  (*Id.* at 5.)

Attached to his opposition, Tipton includes copies of grievances related to his complaint.  (*See* ECF No. 89 at 8-36.)  On January 23, 2016, Tipton filed an informal grievance stating that on January 20, 2016, Guice sexually harassed him by making sexual statements about Tipton and his cellmate.  (*Id.* at 13).  The grievance discussed Tipton's call to the Inspector General's Office on January 22, 2016.  (*Id.* at 15).  Tipton stated he was afraid Guice would retaliate against him or get another correctional officer to retaliate against him for his sexual harassment complaint.  (*Id.* at 17).  On February 3, 2016, nearly ten days before the assault, Tipton filed another informal grievance asking to be moved from his cell because he was being sexually harassed by Guice and his cellmate.  (ECF No. 59 at 12).

According to AR 740.03, "all allegations of inmate abuse by . . . employees . . . shall be immediately reported to the AW's, the Warden and the Inspector General's office. . . ."  (ECF No. 53-8 at 3-4.)  Further, AR 740.05(2)(B) states that all "allegations of sexual abuse" go immediately to the First Level Grievance and bypass the informal grievance procedure.  (*Id.* at 6.)  The First Level Grievance procedure—AR 740.06— directs the Warden to respond to the grievance, refer allegations of sexual abuse to the IG's office for investigation, and gives the IG's office 90 days to complete an investigation.  (*Id.* at 8.)  In resolving a grievance, AR 740.08(2)(C) directs prison officials to resolve legitimate claims at the lowest level of review and allows the prison officials to take "[a]ppropriate measure[s] to protect the inmate from criminal or prohibited acts committed by Departmental employees and staff or other inmates."  (*Id.* at 10).

The court must first evaluate whether Tipton was "incarcerated under conditions posing a substantial risk of serious harm."  *Farmer*, 511 U.S. at 834.  This is a question of

fact and as such must be decided by a jury if there is any room for doubt. *Lemire*, 726 F.3d at 1075-76 (citing *Conn*, 591 F.3d at 1095) (holding that the objective question of whether there was a substantial risk that an arrestee might commit suicide should be decided by a jury.) A prison official labeling a prisoner a "snitch" can "violat[e] [an inmate's] right to be protected from violence while in custody" and support a cause of action under section 1983. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir 1989). Similarly, a prison official labeling an inmate as a "homosexual" or "sex offender" can sufficiently allege an Eighth Amendment Violation. *See Radillo v. Lunes*, 2008 WL 4209824, *2 (E.D. Cal. Sept. 8, 2008) (denying summary judgment on failure to protect claim where plaintiff showed that he was exposed to a serious risk of being assaulted based on defendant's alleged statements to inmates that plaintiff engaged in a homosexual act); *see also Funtanilla v. Tristan*, 2008 WL 2509725, at *13 (E.D. Cal. June 23, 2008) (plaintiff's allegations that prison officials repeatedly referred to him as a sex offender in front of other inmates, causing him to be assaulted, were sufficient to state a failure to protect claim under the Eighth Amendment). Here, Tipton alleges Guice told Tipton's cellmate that Tipton was a sex offender and a homosexual. (ECF No. 7 at 5.) Therefore, Tipton established a triable issue of fact as to whether the comments made by Guice created an objectively substantial risk of harm to Tipton.

Now the court must consider the subjective prong to identify whether Filson knew of and disregarded the risk to Tipton's safety. *Farmer*, 511 U.S. at 837. This inquiry is fact-intensive and typically should not be resolved at the summary judgment stage; as the Supreme Court explained, "[w]hether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Lemire*, 726 F.3d at 1078 (citing *Farmer*, 511 U.S. at 842). Tipton asserts that Filson knew of the substantial risk because he improperly rejected Tipton's grievance and was aware of the PREA

9

1  investigation initiated by the IG's office. (ECF No 89 at 2.) According to Filson, the
2  grievance was rejected as duplicative because Tipton already called the IG's office and a
3  PREA investigation was underway. (ECF No. 85 at 6-7.) However, as Tipton points out
4  there were not two grievances filed, rather there was one grievance and a phone call to
5  the IG's office. (ECF No. 89 at 2.) Additionally, according to AR 740.06, the IG's office
6  has 90 days or more to complete an investigation into the complaint. (ECF No. 53-8 at 8.)
7  A 90-day investigation by no means dissipates any immediate danger to the inmate.
8  Filson's failure to address the situation merely because an investigation was initiated could
9  lead a jury to conclude that the Warden was aware of and acted recklessly toward a
10 substantial risk to Tipton's safety. Therefore, Tipton has shown the existence of enough
11 facts to overcome Filson's motion for summary judgment.

### C. Qualified Immunity

Qualified immunity exists as a protection from civil liability to government officials when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The qualified immunity analysis requires the court to consider two elements: (1) whether the facts alleged show a constitutional violation; and if so, (2) whether that right was "clearly established" at the time of the defendant's alleged misconduct. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson v. Callahan*, 555 U.S. 223, 240-242 (2009).

"[W]hether a constitutional right was violated . . . is a question of fact." *Tortu v. Las Vegas Mero. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the court decides as a matter of law the "clearly established" prong of the qualified immunity analysis, the disputed factual issues are decided by the jury. *See Morales v. Fry*, 873 F.3d 817, 824-825 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th Cir. 2018). While the court finds a genuine issue of material fact exists as to whether

Tipton's constitutional rights were violated, the court will address the "clearly established" prong at this time.

Filson contends he is entitled to qualified immunity because he reasonably relied on an administrative regulation that has not been found to be patently violative of fundamental rights and there is no binding caselaw finding that the warden is deliberately indifferent when an investigation is underway. (ECF No. 85 at 9.) "Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations omitted). There is no doubt that any reasonable prison official aware of a substantial risk to the inmate's safety and who takes no action to protect the inmate would know their inaction violates the constitution. *See id.*

To deny Tipton's grievance as "duplicative" required Filson to engage in administrative gymnastics. In fact, the grievance at issue was the first grievance Tipton filed. (ECF No. 89 at 9.) Filson unconvincingly asserts that Tipton's phone call to the IG's office is a grievance. (ECF No. 85 at 9). The regulations Filson relied on to reject Tipton's grievance do not direct the Warden to reject a grievance when the IG's office is already aware of a PREA allegation. (*See* ECF No 53-8). What the regulations do provide is a detailed grievance procedure that requires an inmate to file specific grievance forms. (*See* ECF No. 53-8). Moreover, in contradiction to Filson's position, the regulations actually require a duplicative report—one to the IG's office and one to the Warden—when staff misconduct or sexual abuse is alleged. (*See* ECF No. 53-8 at 9.) For example, when sexual abuse is alleged solely to the Warden, the Warden is required to also refer the complaint to the IG's office. (*See id.*) There is no functional difference between the Warden referring a case to the IG and an inmate referring a case to the IG, and to hold that an inmate has already grieved an issue without actually filing a grievance is clearly contradicted by the administrative procedure associated with sexual abuse and staff misconduct. (*See id.*)

Additionally, it is patently unreasonable to say that an investigation initiated by the

11

IG's office absolves the Warden of any duty to protect an inmate from impending harm when the Warden is fully aware of circumstances that pose a substantial risk to the inmate's safety. The administrative regulations give the IG's office at a minimum 90 days to complete the investigation. (ECF No. 53-8 at 8). An investigation that lasts 90 days or more does nothing to dissipate the danger. No reasonable prison official could believe that leaving an inmate in close contact with the people the inmate claims pose a substantial risk to his health and safety during the pendency of a 90-day investigation protects the inmate from harm. Not only do the facts of this case demonstrate why Filson took an unreasonable position but common sense would dictate such a result. Therefore, qualified immunity is not proper in this case.

**V.    CONCLUSION**

For good cause appearing and for the reasons state above, the court recommends that Filson's motion for summary judgment (ECF No. 85) be denied.

The parties are advised:

1. Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-3 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. There objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's Judgment.

///
///
///
///
///

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Filson's Motion for Summary Judgment (ECF No. 85) be **DENIED**.

DATED: November 2, 2020

_____
UNITED STATES MAGISTRATE JUDGE